**In re Mickey BLACKBURN and Diane E. Blackburn, Debtors.**

**Mickey BLACKBURN and Diane E. Blackburn, Movants,**

v.

**SECURITY PACIFIC CREDIT CORPORATION, Respondents.**

**Bankruptcy No. 87–8768–M13.**

United States Bankruptcy Court, S.D. California.

Aug. 2, 1988.

John C. Colwell, San Diego, Cal., for debtors.

Halbert B. Rasmussen, Manning, Leaver, Bruder & Berberich, Los Angeles, Cal., for Secured Creditor.

Jerry Michael Suppa, San Diego, Cal., for Beneficial Finance.

Harry Heid (David Skelton), San Diego, Cal., Trustee.

MEMORANDUM DECISION

LOUISE DeCARL MALUGEN, Bankruptcy Judge.

Debtors Mickey and Diane Blackburn seek confirmation of their amended Chap-

ter 13 plan. In part, the plan provides for payment of $7,900, at the rate of $183 per month in satisfaction of the purchase option under a vehicle lease. Security Pacific Credit Corporation, the lessor, has objected to confirmation and asserts that the lease terminated pre-petition and cannot be assumed.

On November 28, 1983, Mickey Blackburn and SEPAC, a subsidiary of Security Pacific Bank, executed a Closed End Vehicle Agreement in Colorado, concerning a 1984 pickup truck. The lease was for a term of 48 months, with the last payment due December 5, 1987. The lease provides Blackburn with the option of purchasing the vehicle at the expiration of the lease, or at its early termination, if the lease is not in default.

On July 13, 1987, debtors filed a Chapter 7 petition and listed Security Pacific as a secured creditor. In addition to their schedules of assets and liabilities, debtors included a document with their Chapter 7 petition entitled "Debtor's Notice of Intent Under 11 U.S.C. Sec. 521(2)." This notice states that debtors intend to retain the truck and reaffirm the debt as provided in § 524(d). The record does not reflect whether this notice was served on Security Pacific; however, no reaffirmation agreement was executed.

On October 19, 1987, Security Pacific repossessed the truck in violation of the automatic stay.[1] At the time the truck was repossessed, debtors assert that three monthly lease payments were owed to Security Pacific. Debtors' Chapter 7 discharge was entered November 16, 1987. During the pendency of the Chapter 7 case, the trustee did not assume this agreement.

On November 5, Security Pacific notified debtors, purportedly by certified mail, that the lease had been terminated, and indicated the unpaid balance on the lease to be $7,517.77, which included all payment arrearages under the lease. The November 5 letter also explained how debtors' termination liability under the lease would be

calculated. On December 4, the day before the last regularly scheduled lease payment was due, debtors filed their Chapter 13 petition.

Debtors' Chapter 13 plan proposes that they are to exercise the purchase option provided for in the vehicle lease and pay out, the purchase option over the life of their Chapter 13 plan.

## ISSUES

I. Whether Chapter 7 debtors retain an interest in a vehicle lease rejected under 11 U.S.C. § 365(d)(1).

II. Whether debtors' amended plan should be confirmed and the debtors permitted to exercise the purchase option in their lease and pay out the option price over the life of the plan.

## DISCUSSION

### I.

11 U.S.C. § 365(d)(1) provides:

In a case under chapter 7 of this title if the trustee does not assume or reject an executory contract or unexpired lease ... of personal property of the debtor within 60 days after the order for relief ... then such contract or lease is deemed rejected.

It is uncontroverted that the Chapter 7 trustee did not assume the lease; thus, it was rejected.

Debtors argue that when a lease is rejected by operation of § 365(d)(1), this rejection does not operate as a rejection of the lease by *debtors*. Therefore, upon rejection by the Chapter 7 trustee, debtors would be free to continue to perform under the terms of the lease. In support of their position, debtors cite *In re Vertich*, 5 B.R. 684 (Bankr. D.S.D.1980).

In *Vertich*, debtors purchased real property under a contract for deed and subsequently filed a Chapter 7 petition. The Chapter 7 trustee failed to assume or reject the executory contract, and the contract

---

1. The Court conducted a separate evidentiary hearing on the issue of whether Security Pacific had willfully violated the automatic stay, deter-

mined that the stay had been violated and awarded monetary sanctions against Security Pacific for the violation.

was deemed rejected. Thereafter, the creditor sought relief from the automatic stay to proceed with its foreclosure action. The trustee opposed relief from stay and argued that state law gave the debtors certain redemption rights with respect to the property, a possible vendee's lien against the property and an equitable interest in the property. Trustee asserted that although his interest in the Contract for Deed was rejected, he retained the debtors' interest in these other rights granted by state law. The bankruptcy court agreed with the trustee and, although it granted relief from the stay, the court wrote:

> The rationale behind a Trustee assuming an executory contract in a Chapter 7 case is that possibly the contract might be sold by the trustee for a profit. Here, the Trustee elected to reject the Contract for Deed. The rejection of the contract, however, did not waive any interest in the property debtors had under equitable or state law as a result of the contract being terminated and the subsequent foreclosure, the trustee succeeding to any such rights of the debtors. At. 686.

Debtors argue that under Calif.Civ.Code § 2981, *et seq.*, they retain the right to reinstate the contract even after repossession. Calif.Civ.Code § 2983.2 governs the notice lessors are required to provide lessees of repossessed motor vehicles prior to selling the vehicle. Among these are that a right to reinstate the contract exists, and that debtors may redeem the vehicle by paying in full the balance due on the lease. A fair reading of these sections indicate that under California law, these are rights enjoyed by lessees of motor vehicles.

Security Pacific disputes debtors' reading of *Vertich* and contends that the court merely ruled that the trustee's rejection under § 365(d)(1) does not operate to forfeit any of his rights in the property that he has under state law. Security Pacific asserts that *Vertich* cannot be read so as to allow Chapter 7 debtors to continue performance under a rejected lease. Moreover, Security Pacific notes that the lease was executed in Colorado; hence, California law is not applicable.

■ Initially, it should be noted that Colorado law and not the law of the State of California controls *interpretation* of the lease agreement. Paragraph 22(e) of the lease agreement provides for the lease to be interpreted according to the laws of the state in which debtor resides at the time of its execution; in this instance, Colorado. This does not, however, make California statutes concerning reinstatement of a lease irrelevant, since these rights do not involve interpretation of the lease agreement, but, rather, are granted by California law regardless of where the contract was executed.

It should come as no surprise to Security Pacific that certain California statutes would be applicable in the event a dispute concerning the vehicle arose. Presumably, when the vehicle was brought into California from Colorado, Security Pacific obtained a new ownership certificate from the State of California in order to perfect its interest in the vehicle under California law. Moreover, the lease agreement provides for assignment of the lease to Security Pacific at its California address.

Inasmuch as debtors currently reside in California and the vehicle is physically located here, California has an interest in having its laws applied to this dispute. As a matter of the conflict of laws, the State of Colorado (which does not appear to have the same protections for lessees of motor vehicles) has no interest in having its laws applied. When considering which law to apply, California courts will not apply the law of another state that has no interest in the outcome of the dispute. *Reich v. Purcell*, 67 Cal.2d 551, 556, 63 Cal.Rptr. 31, 432 P.2d 727 (1967). Moreover, choice of law clauses give way where important public policy considerations exist. *MGM Grant Hotel, Inc. v. Imperial Glass Co.*, 65 F.R.D. 624, 630–31 (D.Nev.1974) *rev'd* on other grounds, 533 F.2d 486 (9th Cir.1976), *cert denied* 429 U.S. 887, 97 S.Ct. 239, 50 L.Ed.2d 168 (1976). Reinstatement of a lease after default is, of course, an important legal right existing under California law, independent from any rights debtors enjoy under the Bankruptcy Code.

A more difficult question is the issue of what effect, if any, rejection of a lease of personal property under 11 U.S.C. § 365(d)(1) has on a Chapter 7 debtor's interest in a lease. The Bankruptcy Code is silent on this issue and it does not appear that the Ninth Circuit has yet taken a position on the issue. However, there is case authority which is helpful to some extent in resolving this issue.

Neither rejection of a lease under § 365(d)(1), nor entry of a discharge order terminates a lease. The effect of rejection of a lease is governed by 11 U.S.C. § 365(g), and termination of the lease is not a consequence of rejection. This Court has previously addressed this issue and reached this conclusion in *In re Picnic 'N Chicken,* 58 B.R. 523, 525–26 (Bankr.S.D.Cal.1986). The effect of a discharge is governed by 11 U.S.C. § 524, which section is silent on the issue of lease termination. Section 365(g) provides that rejection of an unexpired lease merely results in a breach of the lease. The consequences of a breach of a lease are, of course, determined by state law. *In re Cochise College Park, Inc.,* 703 F.2d 1339, 1348 (9th Cir.1983). Similarly, in order to determine whether a lease has terminated pre-petition, one looks to state law. *In re Windmill Farms,* 841 F.2d 1467 (9th Cir.1988).

The language debtors cite from *Vertich* ostensibly supports their position; however, a critical distinction exists which makes their reliance on it misplaced. In *Vertich,* the court merely ruled that a trustee's rejection of a lease does not affect other rights that state law gave debtors. However, upon the filing of the Chapter 7 case, the trustee succeeded to these state-created rights, as the *Vertich* court noted in inviting the trustee to pursue these rights in state court for the benefit of the estate. *Vertich, supra,* at 686.

 The Court will assume without deciding that debtors had a significant legal interest in the truck via their rights of reinstatement and redemption under California law, on the date the Chapter 13 petition was filed.[2] This allows the Court to reach the ultimate issue before her, which is confirmability of the Chapter 13 plan.

## II.

Section 1322(b)(7) allows a Chapter 13 plan to provide for the assumption of an unexpired lease of debtor *subject to § 365.* Section 365(c) provides, in pertinent part:

[T]he trustee may not assume ... [an] unexpired lease of the debtor, ... if— (2) such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, ....

By way of their plan, debtors are attempting to obtain that which the lease agreement does not provide them—financing beyond the stated term of the lease. The lease agreement makes no provision whatever for debtor to finance the residual purchase price of the vehicle upon expiration of the lease term. Debtors' lease agreement expired by its own terms the day after debtors filed their Chapter 13 petition. According to the terms of the lease, at expiration of the lease, absent purchase of the vehicle, the debtors must return it to Security Pacific.

Inasmuch as debtors' proposed plan violates the provisions of § 365(c), it cannot be confirmed.

Security Pacific is directed to prepare an order in conformance with this Memorandum Decision with ten (10) days from the date hereof.

2. Debtors' interest may have been only a possessory interest in the truck. Inasmuch as the Court ruled that Security Pacific's repossession of the truck was in violation of the stay, absent the wrongful repossession, debtors could have remained in possession of the truck until their Chapter 13 petition was filed. Although under *Vertich* the trustee would have succeeded to these rights, on September 9, 1987, the trustee filed its Report of No Distribution. Section 554(c) provides that property which is scheduled and is not administered during the case is abandoned to the debtor. In this circuit, when property is abandoned by a trustee, title reverts to the debtor, *nunc pro tunc. Mason v. C.I.R.,* 646 F.2d 1309, 1310 (9th Cir.1980). Thus, debtors' rights under the California automobile leasing statutes reverted to debtors.