**In re Armando J. SOLIS, M.D., Debtor.**

**Bankruptcy No. 93–41508 (JHG).**

United States Bankruptcy Court,
S.D. New York.

Oct. 6, 1994.

**DECISION ON MOTIONS REGARDING THE PROCEEDS FROM THE SALE OF THE DEBTOR'S MEDICAL PRACTICE**

JEFFRY H. GALLET, Bankruptcy Judge.

## INTRODUCTION

Armando J. Solis, M.D. ("Solis" or the "Debtor") moves, pursuant to 11 U.S.C. § 105(a), essentially, for a judgment declaring that the proceeds of the sale of his medical practice are not property of the estate. Jeffrey Sapir, the chapter 13 trustee ("Trustee") objects and moves to modify the confirmed plan to include the sale proceeds in the estate. 11 U.S.C. § 1329.

## FACTS

Debtor, a physician practicing medicine in New York City, first filed for bankruptcy protection under chapter 13 on July 17, 1990. That case was dismissed (Garrity, J.) on March 24, 1993. Two days later, he again filed for bankruptcy protection under chapter 13.

On October 1, 1993, he submitted a plan which provided for his unsecured creditors to be paid about 10% of their claims from income earned from his business, a medical practice. That plan, which was confirmed on October 27, 1993 (Garrity, J.), effectively stripped the medical practice of creditors' liens, making it more attractive to a purchaser. The plan gave no indication of any intention to sell the medical practice.

Less than a month later, on November 22, 1993, the Debtor contracted to sell the practice. That contract was superseded by a subsequent contract with the same purchaser dated January 13, 1994. The second contract provided for the sale of the practice for $40,000, payable $15,000 on January 13, 1994 and $25,000 in monthly payments of $1,130.69, with the unpaid balance earning interest at the rate of 8% per annum. The Debtor retained the right to collect accounts receivable as of December 31, 1993.

The Debtor then moved to Florida where he is practicing medicine at the Stanley C.

Mujica and Goodman (Anthony F. LeCrichia, of counsel), New York City, for debtor.

Jeffrey L. Sapir, Chapter 13 Trustee, White Plains, NY.

Myers Community Health Center, Inc. for an undisclosed salary. He is up to date in his payments under his plan.

### DISCUSSION

■ The post-confirmation modification of a chapter 13 plan is controlled by 11 U.S.C. § 1329.[1] A confirmed chapter 13 plan may be modified on application by a debtor, trustee or creditor to increase or reduce payments after confirmation but before completion of debtor's payments. 11 U.S.C. § 1329(a)(1); *In the Matter of Ronald Witkowski,* 16 F.3d 739 (7th Cir.1994); *In re Powers,* 140 B.R. 476 (Bankr.N.D.Ill.1992).

■ A trustee's application "should be limited to situations in which there has been a *substantial change* in the debtor's income or expenses that was *not anticipated* at the time of the confirmation hearing." (emphasis added) 5 L. King, *Collier on Bankruptcy,* ¶ 1329.01 at 1329–5, (15th ed. 1994). *See also, In re Fitak,* 92 B.R. 243 (Bankr. S.D.Ohio 1988), aff'd, 121 B.R. 224 (S.D.Ohio 1990); *In re Arnold,* 869 F.2d 240 (4th Cir. 1989); *In re Gronski,* 86 B.R. 428 (Bankr. E.D.Pa.1988); *In re Euerle,* 70 B.R. 72 (Bankr.D.N.H.1987).

■ An unanticipated change is one where "a debtor's altered financial circumstances could not have been reasonably anticipated at the time of confirmation by the parties seeking modification." *In re Fitak,* 121 B.R. at 226. A substantial change in circumstances can be increased income, *In re Arnold,* 869 F.2d at 240, or receipt of a large sum of money. *In re Fitak,* 92 B.R. at 250 ($16,000 withdrawn from retirement fund), aff'd, 121 B.R. 224; *In re Euerle,* 70 B.R. 72 (inheritance); *In re Koonce,* 54 B.R. 643 (Bankr.D.S.C.1985) (lottery winnings).

■ Once there is a determination that the plan should be modified, the new plan must comply with the Bankruptcy Code. Section 1329(b)(1) incorporates, by reference, sections 1322(a), (b), 1323(c), and 1325(a). *See, In re Fitak,* 121 B.R. at 266; *In re Perkins,* 111 B.R. 671, 672–3 (Bankr. M.D.Tenn.1990). These provisions require the plan be proposed in good faith, 11 U.S.C. § 1325(a)(3), and in accord with the ability to pay test, 11 U.S.C. § 1325(b). *In re Fitak,* 92 B.R. at 250, *In re Smura,* 84 B.R. 327, 328 (Bankr.W.D.N.Y.1988); 5 L. King, *Collier on Bankruptcy,* 1329.01 at 1329–5, (15th ed. 1994).

Essentially, Dr. Solis used his plan to strip his largest asset, the medical practice, of liens, so he could sell it free and clear. Such business asset sales, while not unusual in chapter 11 proceedings, are ill fitted to chapter 13 cases.

■ Chapter 11 debtors may use the bankruptcy process to increase the value of their businesses so that they can be sold for the benefit of creditors. *In re Maxwell Newspapers,* 981 F.2d 85 (2d Cir.1992); *In re Minges,* 602 F.2d 38 (2d Cir.1979). Here, Dr. Solis seeks to increase the value of his business, at the expense of his creditors, to benefit himself. Such a sale would not be approved in a chapter 11 proceeding and should not be permitted here.

The Trustee's argument is persuasive. The plan should be modified to benefit the unsecured creditors, who are currently receiving only a small part of their claims. Debtor's sale of his medical practice was not anticipated by either the creditors or the Trustee at the time the plan was confirmed, nor was it reasonably foreseeable by them. *In re Fitak,* 121 B.R. at 226. While it ap-

---

**1.** 11 U.S.C. § 1329 states that:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

   (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

   (2) extend or reduce the time for such payments; or

   (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

(b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of his title apply to any modification under subsection (a) of this section.

   (2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

pears that it was his goal to confirm his plan, sell his medical practice and accept employment in Florida, Dr. Solis neglected to inform either the Trustee or his creditors.

 The receipt of $40,000 is a substantial change in circumstances. *See, In re Fitak,* 121 B.R. at 226; *In re Euerle,* 70 B.R. at 73; *In re Koonce,* 54 B.R. at 644. After finding unanticipated, substantial changed circumstances, I must balance the equities in deciding whether or not to permit amendment of the plan. *In re Smura,* 84 B.R. at 328–9 ("the good faith provision of 11 U.S.C. § 1325(a)(3) requires the Court to examine the equities").

Dr. Solis is attempting to use the bankruptcy system, not as a shield to permit him a "fresh start," but, rather, as a sword to cut away legitimate encumbrances of his creditors so that he can move to Florida with a windfall profit. That could not have been Congress' intention when it enacted chapter 13. Such a cynical, inequitable and manipulative use of the bankruptcy process should not be permitted. *In re Smura,* 84 B.R. at 329; *In re Fitak,* 121 B.R. at 226. Once a debtor invokes the Code's protection he must yield to its intent.

Dr. Solis argues that modification is precluded because there is a res judicata effect to all justiciable issues after confirmation of the plan. He may be correct, but that is not the issue here. The Trustee is not attacking the confirmed plan. Rather, he is requesting a modification after what he charitably calls an unanticipated, substantial change in circumstances. Section 1329 was amended by Congress in 1984 specifically to authorize this kind of modification. *In re Koonce,* 54 B.R. at 644; 5 L. King, *Collier on Bankruptcy,* ¶ 1329.01 at 1329–5, (15th ed. 1994).

 Debtor argues that his medical practice vested first in his estate (11 U.S.C. § 1322(b)(9)) and then in him (11 U.S.C. § 1327(b)), thereby putting it beyond the reach of his creditors. A modification under section 1329 is not precluded by section 1327. Although section 1327(a) binds the debtor and the creditors, a confirmed plan may be modified at any time after confirmation before payment is completed. *In re Perkins,*

111 B.R. at 672. To rule otherwise would render section 1329 meaningless. Section 1327(a) does not limit modification, rather, it is "a statutory description of the effect of a confirmed plan or a confirmed modified plan." *Id.*

If the plan is not modified, the debtor will receive a $40,000 windfall while his unsecured creditors receive only 10% of their claims. That would be a perversion of the Code's good faith provision (section 1325(a)), and ability to pay test, (section 1325(b)). *See, In re Fitak,* 92 B.R. at 250, *aff'd,* 121 B.R. 224; 5 L. King, *Collier on Bankruptcy,* ¶ 1329.01 at 1329–5, (15th ed. 1994).

### DECISION

Accordingly, Debtor's motion is denied.

The Trustee's motion to modify the plan to include the sale price of the medical practice, with the interest paid thereon, to Debtor's payments under the plan, is granted.

Settle order.